IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES W. REED, III | § | |
|     a/k/a DWIGHT BYRD | § | |
|     TDCJ-CID #1366669 | § | |
| | § | C.A. NO. C-07-190 |
| v. | § | |
| | § | |
| LIEUTENANT GALLEGOS, ET AL. | § | |

## ORDER DENYING PLAINTIFF'S MOTION TO REOPEN HIS CIVIL COMPLAINT

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983. On April 20, 2007, plaintiff filed a civil rights complaint, alleging that defendants Gallegos and Perez inflicted cruel and unusual punishment on him by using excessive force during a cell extraction. (D.E. 1). On December 10, 2007, this case was set for trial on plaintiff's claims against defendant Perez, and he was appointed counsel. (D.E. 47, 48).

On June 6, 2008, plaintiff filed a notice of settlement. (D.E. 55). On June 16, 2008, the parties filed an agreed motion to dismiss plaintiff's claims with prejudice. (D.E. 56). On June 17, 2008, the motion was granted. (D.E. 58). On June 19, 2008, plaintiff filed the pending motion to reopen his civil complaint. (D.E. 60). For the following reasons, his motion is DENIED.

### I. PLAINTIFF'S ALLEGATIONS

In the pending motion, plaintiff explains that he did not wish to dismiss this action:

> It is not my wish to dismiss my civil complaint. My life was in danger at the [Michael Unit in Tennessee Colony, Texas]. An officer had already broken my finger, my food was being used as a

>   form of punishment against me ... by being denied my meals.[1]  I filed a motion for a temporary restraining order in the Eastern District of Texas, Tyler Division ... concerning these same life endangerment concerns.  The only way for me to leave the Michael Unit and return to Maryland, was to sign the settlement agreement.  But I only did so, because I honestly feared for my safety the longer I remained at the Michael Unit.

(D.E. 60, at 1).  On June 26, 2008, plaintiff filed a second letter advising the Court that he wished to continue his lawsuit.  (D.E. 62).  He explained about numerous pressures that caused him to assent to the settlements:

>   On [October 13, 2007] I was indicted for the assault of a public servant with a deadly weapon, at the John B. Connally Unit in Kenedy, Texas.  On [February 1, 2008] I was sentenced to life in prison [for this crime].  Since the allegations of this indictment occurred in October, I've been subjected to retaliation from the administrations of the various prisons that I was housed.  I was the victim of excessive uses of force on numerous occasions, one of which resulted in me receiving a broken finger on [January 3, 2008], requiring me to have surgery on [January 15, 2008].  My food was continuously used against me as a form of punishment, I was regularly denied my meals.  It was for these reasons that I signed the Global Settlement Agreement ... But I did so in duress, because I feared for my safety the longer I remained in the Texas Department of Criminal Justice.

Id. at 1.  He also notified the Court that he had already been transferred to a correctional facility in Maryland.  Id. at 2.

On July 1, 2008, a hearing was held to determine the validity and scope of the settlement agreement.  See Soto v. Estelle, 251 Fed. Appx. 883, 884 (5th Cir. 2007) (per curiam) (unpublished).  At the hearing, plaintiff explained that, pursuant to the terms of the settlement agreement, he had also moved to voluntarily dismiss federal civil rights suits in the Western

---

[1] Ellipses in this excerpt are present in the original filing, which is reproduced without change.

District of Texas and District of Maryland.[2]  Reed v. Morales, et al., No. 07-CV-691 (W.D. Tex.); Reed v. Dotson et al., No. 05-CV-1216 (D. Md.).  He had been appointed trial counsel in those two cases as well.  He also agreed to dismiss the pending appeal of his 2008 conviction for assaulting a corrections officer.  In return, the State of Texas agreed to allow him to serve his Maryland sentence in Maryland, as well as refrain from prosecuting him for other crimes committed while in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID").  Plaintiff had already been transferred to Maryland to serve the remainder of his prior sentence.  Upon completion of that sentence, he was to be returned to TDCJ-CID custody to serve the remainder of his Texas sentence.

Plaintiff did not explain how defendants coerced him into settling his claims against his will.  Instead, he testified only that he believed they had unfairly exploited his situation.  Plaintiff's counsel denied having been informed of any coercion.  He has filed a motion to withdraw.  (D.E. 64).

## II.  APPLICABLE LAW

The Fifth Circuit has explained that the validity of a settlement agreement is "determined by federal law - at least where the substantive rights and liabilities of the parties derive from federal law."[3]  Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984)

---

[2] Plaintiff did not, however, dismiss a lawsuit filed in the Eastern District of Texas.  See Reed v. Warren, et al., No. 08-CV-132 (E.D. Tex.).

[3] Other circuits have held that federal courts cannot apply federal common law "unless some statute (or the Constitution) authorized the federal court to create a rule of decision." Makins v. District of Columbia, 277 F.3d 544, 547-48 (D.C. Cir. 2002) (citation omitted) (describing circuit split on issue).  In this case, applying Texas law would not lead to a different result.  Moreover, the Court may properly rely on Texas law where it does not conflict with federal law, or where federal law is not well developed.  See Palmer v. Barge Line, Inc. v. So.

(citations omitted). The federal common law of contracts, in turn, "uses the core principles of the common law of contracts that are in force in most states." Smith v. United States, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (per curiam) (citations omitted). "These core principles can be derived from the Restatements." Deville v. United States ex rel. Dep't of Veterans Affairs, 202 Fed. Appx. 761, 763 n.3 (5th Cir. 2006) (per curiam) (unpublished) (citation omitted).

A contract agreed to under duress is voidable by the victim. Id. (citing Restatement (Second) of Contracts § 175 (1981)); accord Wamsley v. Champlin Ref. & Chems., Inc., 11 F.3d 534, 538 (5th Cir. 1993); Country Cupboard, Inc. v. Texstar Corp., 570 S.W.2d. 70, 74 (Tex. App. 1978) (citation omitted). The Restatement of Contracts provides two bases for voiding a contract due to duress:

> (1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.
>
> (2) If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction.

Restatement (Second) of Contracts, § 175.

The party's assent must have actually been induced by the improper threat. Id., comment c; see also Windham v. Alexander, Weston & Poehner, P.C., 887 S.W.2d 182, 185 (Tex. App. 1994) (intimidation sufficient to induce a party to unwillingly manifest assent constitutes duress). In this context, causation is determined subjectively:

> Threats that would suffice to induce assent by one person may not

---

Petrol. Trading Co., 776 F.2d 502, 505 n.4 (5th Cir. 1985).

> suffice to induce assent by another. All attendant circumstances must be considered, including such matters as the age, background, and relationship of the parties. Persons of a weak or cowardly nature are the very ones that need protection; the courageous can usually protect themselves.... However, ... circumstantial evidence may be useful in determining whether a threat did in fact induce assent.... [S]uch factors as the availability of disinterested advice and the length of time that elapses between the making of the threat and the assent may also be relevant in determining whether the threat actually induced the assent.

Restatement (Second) of Contracts, § 175, cmt. c; see also Sudan v. Sudan, 145 S.W.3d 280, 286-87 (Tex. App. 2004) (applying subjective test for causation), rev'd on other grounds by Sudan v. Sudan, 199 S.W.3d 291 (Tex. 2006) (per curiam).

Regarding the "reasonable alternative" requirement, the restatements explain that

> The alternative may take the form of a legal remedy. For example, the threat of commencing an ordinary civil action to enforce a claim to money may be improper. However, it does not usually amount to duress because the victim can assert his rights in the threatened action, and this is ordinarily a reasonable alternative to succumbing to the threat, making the proposed contract, and then asserting his rights in a later civil action.

Restatement (Second) of Contracts, § 175, cmt. b (internal citations omitted).

### III. DISCUSSION

During the hearing, plaintiff repeatedly complained that defendants had somehow unfairly exploited his situation. He did not, however, describe any improper pressure, nor did he allege that he was threatened. Indeed, plaintiff contends in his motion that it was his conviction for assaulting a corrections officer that led to the alleged harassment, not his pending lawsuits. See (D.E. 62, at 1). Accordingly, defendants did not improperly threaten him. See Bank of El Paso v. T.O. Stanley Boot Co., 809 S.W.2d 279, 289-90 (Tex. App. 1991) (absent imminent threat, no duress as a matter of law).

Plaintiff also argues that he feared for his life because of the general level of harassment by third parties, and that his only reasonable course of action was to settle his cases to obtain a transfer. Plaintiff's argument fails for two reasons. First, he does not show that he had no reasonable alternative except to settle his claims. Second, he does not show that the harassment caused him to settle his claims against his will.

In filings with the Court, plaintiff alleges generally that he has repeatedly been subject to excessive force. (D.E. 60, 62). However, he refers specifically only to a January 15, 2008 incident. Id. This incident is the basis for his pending suit in the Eastern District of Texas. Reed v. Warren, No. 6:08-CV-132. In that complaint, plaintiff admits that the injury occurred during a forcible cell extraction that he instigated by refusing to relinquish his handcuffs. Id., Docket Entry #1, at 5. Similarly, in this action, plaintiff alleged that he was injured during a forcible extraction after refusing to exit his cell. See (D.E. 12, at 3). Regardless of whether his rights were violated, plaintiff could have avoided these forcible extractions by following orders.[4]

Plaintiff could also have sought redress in the courts instead of settling his claims. See Tennessee Gas Pipeline Co. v. Lenape Res. Corp., 870 S.W.2d 286, 304 (Tex. App. 1993) (ability to resort to courts is "present means of protection" that ordinarily precludes finding of duress). He is no stranger to federal civil rights litigation.[5] Moreover, he could have sought

---

[4] In the District of Maryland, plaintiff also alleged being injured during a forcible extraction caused by his refusal to allow a search of his cell. See Reed v. Dotson, et al., No. 05-CV-1216, Docket Entry #1 at 1 ("We were extracted from our cells, by the extraction team for refusing to allow our cells to be searched.").

[5] Plaintiff has filed at least eight other unsuccessful lawsuits in the District of Maryland. See Reed v. Warden MCAC, 05-CV-3197 (D. Md.); Reed v. Flanagan, et al., No. 02-CV-2487 (D. Md.); Reed v. Graham, et al., No. 95-CV-2117 (D. Md.); Reed v. Larkin, et al., No. 95-CV-1489 (D. Md.); Reed v. Jones, et al., No. 96-CV-3924 (D. Md.); Reed v. Henderson, et al., No.

advice from one of the three different attorneys appointed to represent him. Accordingly, the Court finds that plaintiff had reasonable options other than settling his claims.

Additionally, plaintiff cannot prevail without showing that TDCJ officials harassed him until his will to resist was broken, leading him to settle his claims involuntarily. See Tower Contracting Co. v. Burden Bros., Inc., 482 S.W.2d 330, 335 (Tex. App. 1972). Plaintiff's extensive disciplinary record, well-documented in federal lawsuits, indicates that this was not the case. On October 30, 2006, plaintiff filed suit in the District of Maryland, claiming that his transfer to Texas was retaliation for filing civil complaints. Reed v. Sizer, et al., 06-CV-2852 (D. Md. Aug. 21, 2007), Docket Entry #1, at 4. Defendant's motion for summary judgment explains that:

> On April 12, 2007, an application for an Interstate Corrections Compact Transfer for plaintiff was prepared by MCAC staff. The application was an involuntary administrative request due to plaintiff's unsatisfactory adjustment in Maryland's Division of Correction (DOC). A case management team approved the recommendation.... The rationale was that plaintiff is a highly disruptive inmate instigator who has a possible gang affiliation. It was noted that plaintiff was manipulative and intimidating towards some of the staff.
> On June 10, 2005, [the assistant warden] sent a memorandum to [the case management supervisor, detailing plaintiff's adjustment history. The assistant warden advised the case management supervisor] that plaintiff had been housed at MCAC since August 31, 2004, and was extremely disruptive and manipulative. He also noted that plaintiff had accumulated a total of 25 infractions since his arrival at MCAC, and was not scheduled to be released from disciplinary segregation until March 2006.

---

95-CV-1512 (D. Md.); Reed v. Warren, No. 95-CV-1487 (D. Md.); Reed v. Chambers, 95-CV-01488 (D. Md.).

7

Id., Docket Entry #10, at 4-5.[6]  On August 21, 2007, defendant's motion was granted.  Id. at Docket Entry #22.

On August 22, 2007, plaintiff filed a lawsuit in the Western District of Texas.  Reed v. Morales, et al., 07-CV-691.  He claimed that "cruel and unusual punishment was imposed upon him when he was subjected to cell searches every two hours, which caused him to suffer sleep deprivation, hallucinate, and attempt suicide."  Id., Docket Entry #46, at 1.  In an order denying defendant's motion for summary judgment, the court outlined the uncontroverted summary judgment evidence:

> From the time Reed was received by TDCJ-CID to the time he entered the Connally Unit (approximately seven months), Reed was housed in three different units and amassed twenty-nine disciplinary cases....  [He] was involved in nine staff assaults, in possession of several self-made weapons, and indicted on one felony charge.  Reed also has a history of swallowing small objects, only to reproduce them at later times and use them against staff.

Id., Docket Entry # 38, at 3.  Plaintiff arrived at Connally Unit in January 2007 and left in October 2007.  Id. at 4.  "[I]n that time Reed was found guilty of nine staff assaults, four staff assaults with weapons, and six weapon possessions."  Id.

Plaintiff actively resisted prison discipline at the Connally Unit.  On January 21, 2007, he refused to allow officers to remove his handcuffs and secure the food slot of his cell.  Id.  He was then seen with a handcuff key.  Id.  As officers prepared to use chemical agents, he barricaded his door with his mattress and used a towel as an improvised gas mask.  Id.  The key was not recovered during the subsequent use of force.  Id.  The following day, he was observed using the

---

[6] Ultimately, plaintiff was not found guilty of all 25 infractions.  Docket Entry #22, at 2.

key on his handcuffs. Id. He again refused to relinquish it, leading corrections officers to use chemical agents in an attempt to secure compliance. Id. However, the key was not recovered. Id.

On February 7, 2007, he refused to be placed in handcuffs while officers searched his cell. Id. at 5. When officers opened the food slot to use gas, he assaulted an officer with an improvised spear. Id. He also used an improvised mask to ward off the gas. Id. The next day, officers found a five-inch length of sharpened bone and a ten-inch improvised knife. Id. at 5-6. At that point, officers informed him that his cell would be searched every two hours until no weapons had been found for two weeks. Id. at 6. However, on February 20, 2007, he refused to let officers enter his cell, triggering a major use of force. Id. A five-inch improvised weapon was found. Id. Later that day, he was found with another handcuff key. Id. Five days later, he assaulted an officer with another improvised spear. Id.

On March 12, 2007, he was sent to Jester-IV psychiatric unit for crisis management. The searches became less frequent for a short period; however, on April 11, 2007, he assaulted an officer with a razor blade. Id. at 6-7. On May 5, 2007, he assaulted an officer delivering mail. Id. at 7. Afterwards, "Reed continued to be aggressive and assaultive, stating that he intended to stab and kill an officer so that he could return to Maryland." Id.

In response to defendants' motion for summary judgment, plaintiff disputed only his possession of a razor blade on April 11, 2007. Id. Indeed, he argued that the repeated searches of his cell had no legitimate purpose because he was still able to procure weapons, and "assaults continued to occur." Id., Docket Entry #36, at 2.

Plaintiff has demonstrated his ability to resist prison discipline with lethal force. His

failure to allege any imminent threat or unprovoked injury, along with his access to court appointed counsel, leads to the finding that defendants did not overpower his free will.

## IV. CONCLUSION

Plaintiff has not established that he assented to the settlement as a result of duress. Indeed, he got the arrangement that he sought: a transfer to Maryland and the agreement by the State of Texas to forgo prosecuting him for certain alleged offenses. Accordingly, plaintiff's motion to reopen his civil complaint, (D.E. 60), is DENIED.

ORDERED this 9th day of July 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE